IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

KIMBERLEE J. BISHOP,

         Plaintiff,

vs.                                   **Case No. 04-4078-RDR**

JO ANNE B. BARNHART,
Commissioner of Social
Security,
         Defendant.

## MEMORANDUM AND ORDER

This is an action to review the defendant's decision to deny plaintiff's application for disability benefits and supplemental security income benefits based on disability. Plaintiff alleges a disability onset date of August 19, 1999. Plaintiff's applications for benefits were filed on June 25, 2001. A hearing before an Administrative Law Judge (ALJ) was held on July 18, 2003. On February 19, 2004, the ALJ issued a decision denying the applications for benefits, which was affirmed by the Appeals Council and adopted by defendant.

### Legal Standards

We review defendant's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Id. (quotations and citation omitted). However, "[a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988). A failure to apply the correct legal standards or demonstrate it was done is also grounds for reversal. Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996).

Under the Social Security regulations at 20 C.F.R. §§ 404.1520 and 416.920, a five-step sequential evaluation process is used to determine whether to award benefits. Step one concerns whether the claimant is presently engaged in substantial gainful activity. Step two determines whether the claimant has a medically severe impairment or combination of impairments. Step three requires a determination of whether the claimant's impairments are equivalent to one of the listed impairments that the Social Security regulations regard as so severe as to preclude substantial gainful activity. Step four determines whether the claimant can perform past relevant employment. Finally, step five requires a decision of whether the claimant can perform any work which exists in significant numbers in the national economy.

ALJ's decision

The ALJ made the following findings among others. Plaintiff was 34 years old at the time of the hearing before the ALJ. She has a GED, a "limited education" under Social Security regulations. She did not complete any formal education past eighth grade and she took special education classes when she was in school. She has completed training to become a certified nurse's aide. Her previous employment has been as a convenience store manager, office cleaner, materials handler, nurse's aide helper and cashier.

The ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability. He found that plaintiff has the following "severe" impairments for purposes of step two of the sequential analysis:

> borderline intellectual functioning; borderline person-ality disorder; generalized anxiety disorder; major depressive disorder, recurrent, without psychosis; post-traumatic stress disorder (PTSD); migraine headaches; history of cervical strain, status post February and October 2001 motor vehicle accidents; poly-substance disorder - marijuana and opiate dependence and abuse; and an October 2002 right ankle malleolar fracture, lateral non-union, status post open reduction and internal fixation (April 1, 2003).

(Tr. 26). The ALJ concluded that these impairments do not meet or medically equal one of the listed impairments in the Social Security regulations. He determined that plaintiff's allegations and testimony regarding her impairments, symptoms

3

and limitations were not credible. In the ALJ's opinion, plaintiff could have returned to work as a material handler and office cleaner until October 2002. Since that time she has been disabled from her previous relevant employment. According to the ALJ, however, plaintiff has retained the capacity to perform a limited number of light work jobs such as bench assembler, photocopy machine operator, microfilm mounter and electronics subassembler.

Grounds for reversal

Plaintiff makes several arguments to reverse the ALJ's decision to deny benefits. The court is persuaded by plaintiff's first argument and shall discuss only that argument in this decision. The first argument is that plaintiff meets the specifications of section 12.05C of the listed impairments in the Social Security regulations and, therefore, she is entitled to benefits pursuant to step three of the disability benefits evaluation process. Section 12.05C provides that benefits will be awarded if a claimant who is not working has the following condition:

> Mental Retardation: Refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested before age 22. The required severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental

4

>     impairment imposing additional and significant work-
>     related limitation of function.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05C.

The Tenth Circuit has stated that: "'[T]he purpose of § 12.05C is to compensate a claimant with an IQ in the 60-70 range and a limitation of function that affects his work.'" Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (quoting, Sird v. Chater, 105 F.3d 401, 403 n.6 (8th Cir. 1997)). The Circuit also stated in Hinkle that a "significant work-related limitation of function" is a limitation which would satisfy the criteria defined at step two of the disability analysis. Id.

Plaintiff was given an IQ test, the Wechsler Adult Intelligence Scale III ("WAIS-III"), by psychologist Dr. Stanley Mintz in October 2001. As the ALJ notes in his decision, the test results listed plaintiff's full-scale IQ as 70, her verbal IQ as 73, and her performance IQ as 73. (Tr. 21). Under Social Security regulations, the lowest of these scores is used in conjunction with the listing of impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00D(6)(c). As previously reported in this opinion, the ALJ also listed numerous physical and mental conditions which he concluded were "severe" under step two of the disability evaluation process and, therefore, should be considered "significant work-related limitation[s] of function." An IQ score of 70 in combination with severe

functional impairments dictates a finding of disability under the regulations and the case law of the Tenth Circuit.

As the court reads defendant's response to plaintiff's argument, defendant does not deny the existence of other significant work-related limitations. Defendant, however, asserts that the ALJ was justified in concluding that plaintiff's 2001 IQ score was invalid.[1] Defendant's brief makes several points in support of this contention; however, the court finds them unpersuasive.

First, defendant notes that plaintiff has been diagnosed with borderline intellectual functioning. This is correct. (Tr. 254). Defendant asserts that this diagnosis "by definition" does not meet the requirements of § 12.05C. Defendant does not cite authority for this claim, but we assume it is generally accepted that "borderline intellectual functioning" by definition exceeds "mental retardation." Still, Dr. Mintz, the psychologist who made the diagnosis, did not suggest in his report that the IQ score was suspect or invalid. Nor, obviously, does the diagnosis "by definition" preclude

---

[1] The ALJ did not explicitly find that the 2001 IQ score was invalid. The ALJ stated that the validity of the score was put into question. (Tr. 21). But, the ALJ expressly stated that plaintiff's impairments did not meet specifications of the listing of impairments. We deduce from this conclusion that the ALJ found the 2001 IQ score to be invalid.

establishment of the requirements of § 12.05C.

The regulations state with regard to § 12.05:  "If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing."  20 C.F.R. Part 404, Subpart P, App. 1 § 12.00A.  Plaintiff's general intellectual functioning is significantly subaverage.  There is no dispute that deficits in adaptive behavior manifested before the age of 22.[2]  Therefore, plaintiff's limitations meet the specifications of the introductory paragraph to § 12.05.  In addition, plaintiff meets the criteria in subsection C.  Her IQ score was 70 and she manifests other "significant work-related" functional limitations.

Defendant notes that in 1997 plaintiff took an IQ test also from Dr. Mintz, the Wechsler Adult Intelligence Scale Revised ("WAIS-R").  She achieved a full scale score of 75, a verbal score of 76, and a performance score of 78.  These scores, of course, exceed the high end score necessary to meet the listing in § 12.05C.  Defendant, however, does not attempt to explain why the 1997 test, administered by the same psychologist as the

---

[2] Courts have held that this fact may be presumed absent any evidence of a change in a claimant's intellectual functioning. Mitchell v Barnhart, 2004 WL 1626409 (D.Kan. 2004)(citing cases); Vasquez-Ortiz v Apfel, 48 F.Supp.2d 250, 257 (W.D.N.Y. 1999); Herring v. Apfel, 1998 WL 865763 (D.Kan. 1998).

7

2001 test, was a more valid measure of plaintiff's intelligence.[3] Nor, as previously stated, does Dr. Mintz's report suggest that the 2001 score on the updated WAIS-III test, which was first issued in 1997, is invalid.  We conclude that the 1997 score does not provide grounds to reject the 2001 score.

Next, defendant notes that plaintiff has worked previously as a certified nurse's aide and in production and that she would like to return to work.  The Tenth Circuit has stated that a desire to work does not demonstrate the functional capacity to work.  Cavitt v. Schweiker, 704 F.2d 1193, 1195 (10th Cir. 1983). In addition, the other facts referred to in defendant's brief are attributed to Dr. Mintz's report in connection with the 1997 IQ test and must be considered in the context of Dr. Mintz's report in conjunction with the 2001 IQ test.  In the 2001 report, Dr. Mintz stated:

> [Plaintiff] notes her longest job was as a cashier from about 1997 through 1999.  She also worked in nursing homes doing janitorial work and custodial work.  She states she enjoyed working but she notes "now I stay to myself."

(Tr. 253).  In 1997, Dr. Mintz concluded:

> [Plaintiff] exhibits positive work attitudes.  She exhibits good interpersonal skills.  She appears

---

[3] It has been recognized that there is an approximate five-point margin of error for IQ scores.  Burns v. Barnhart, 312 F.3d 113, 125 n. 5 (3rd Cir. 2002) (citing *Diagnostic and Statistical Manual of Mental Disorders 42* (4th ed. rev. 2000)).

> pleasant. She appears as a good candidate for training and placement.

(Tr. 148). In 2001, Dr. Mintz concluded:

> [Plaintiff] functions within the borderline range with slightly lower academic skill levels. She does not have a strong work history and she states she has not worked very much over the past ten years. She has had however some work experiences. I would recommend that she continue in mental health counseling. I am somewhat guarded about her potential, in my opinion, for full time competitive work at this time. A referral to vocational rehabilitation might be appropriate as they might be able to assist her in some supportive type work. She may also wish to apply for social security disability.

(Tr. 254). The 2001 report reflects a deterioration in plaintiff's "performance" which defendant's brief acknowledges. See p. 4. Defendant contends, however, that other evidence of plaintiff's level of functioning places the 2001 IQ score and report in doubt.

For instance, defendant asserts that plaintiff showed "little symptomatology" during the IQ examination according to the ALJ. The court finds no support for this claim. Dr. Mintz found in part:

> [Plaintiff] reads at the fifth grade ending level, with a standard score of 69 and a 2nd percentile ranking, she spells at the fourth grade beginning level, with a standard score of 67 and a 1st percentile ranking. Her math skills are at the fifth grade ending level, with a standard score of 69 and a 2nd percentile ranking. Personality Test results and interview impressions are suggestive of significant depression and anxiety, low self esteem and dysfunctionality. [Plaintiff's] mental conditions

> appear to present significant limitations for her in terms of doing competitive work at this time. She is in mental health counseling and she has been in counseling over the years. She appears to have made limited progress in terms of treatment, but she does appear to depend upon such treatment. She does not appear psychotic. She does not have a psychotic condition. She does not appear phobic or obsessive/compulsive. She appears as a sad, young woman who exhibits some suicidal potential. She does require mental health treatment.

(Tr. 254). Dr. Mintz also found: that plaintiff was alert and oriented as to time and place; that her form and flow of ideation appeared adequate; and that her speech processes appeared adequate. (Tr. 253). On the whole, however, we do not believe the observations of plaintiff's symptoms during the IQ examination place the validity of the IQ test score in question.

Defendant also refers to a vocational assessment of plaintiff performed in November 2001 in which plaintiff stated that she spent her day cleaning house and attending therapy, and that she participated in arts and crafts with her children and had a driver's license. (Tr. 111). The court does not believe these facts create a reasonable question regarding the validity of the 2001 IQ test score. There is no detail given regarding plaintiff's daily activities in the vocational assessment, and there is no description of the circumstances in which the

10

driver's license examination was given.[4]  Nor does the ALJ make any comparison or contrast with the activities of daily living described in the record at Tr. 103-109 or during plaintiff's testimony before the ALJ.  These more detailed statements of plaintiff's activities support rather than detract from plaintiff's claims in this matter.

Defendant refers to the part of the vocational assessment which observes that:

> [Plaintiff] worked at a steady pace and required no assistance other than the standard verbal/written instructions. [Plaintiff] ignored distractions and exhibited no unusual frustrations.  She was friendly and cooperative. [Plaintiff] was casually dressed and adequately groomed.

(Tr. 115).  Defendant, however, ignores one of the conclusions of the report:

> [Plaintiff] has limited academic skills and also is suffering from physical and mental problems.  Many of the jobs for which [plaintiff] is qualified are physically intensive.  At the present time, it would be difficult for [plaintiff] to be successfully employed full time.  If she does seek employment, part time work would be advisable to assess her mental and physical stamina.  Being a part time cashier in a low stress environment might be possible for her.

(Tr. 117).  We do not believe the vocational assessment provides sufficient grounds to question the validity of the 2001 IQ test

---

[4] Plaintiff testified before the ALJ that she took the examination on her own, but there are no other details. (Tr. 579).

11

score.

Defendant notes that plaintiff told the ALJ that she read to her children and that she helped them with homework. This slightly overstates plaintiff's testimony which was that she read children's books to her children (ages 7 and 8) but now they read to her and that she helps them with their homework when she can. (Tr. 606-07). It does not undermine the validity of the 2001 IQ test score. Defendant further notes that plaintiff attended a beauty college and an office training program. Plaintiff did not complete either course, however. (Tr. 576). The record does not support a conclusion that plaintiff was capable of completing either course. Therefore, we do not find this to be a convincing argument against the validity of the IQ test score. Defendant also suggests that plaintiff would have advanced more in school if she had not married at the age of 14, if her family had not moved frequently, and if her husband had wanted her to stay in school. This is speculation and it does not undermine the 2001 IQ test.

In the court's opinion, the points in the record which seem most inconsistent with the 2001 IQ score are plaintiff's work history and her GED. Plaintiff has worked as a convenience store assistant manager and manager, a cashier, an office cleaner, a material handler in a food factory and a nurse's aide

helper. (Tr. 615). Plaintiff worked as a cashier for four to six months. (Tr. 593). She worked in the food factory for about two years from 1992 to 1994 until she broke her arm in a machine and was afraid of the machine when she returned to work. (Tr. 137). She worked as an office cleaner for about six months. (Tr. 590). She worked at three different nursing homes for brief periods of time. (Tr. 137). The last job she held for an extended period of time was as an assistant manager at a convenience store for about a year, and then as manager of the same store for about a year. She was fired from this job. (Tr. 597). Plaintiff testified that a manager at another store, her assistant manager and her mother helped her with the paperwork and other duties. (Tr. 580). In fact, plaintiff stated that the assistant manager should have been the manager and she should have been the assistant. (Tr. 590).

The court agrees with defendant that the ALJ is not required to accept an IQ score which is inconsistent with the record. See Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986). An ALJ, however, "cannot reject IQ scores based on personal observations of the claimant and speculative inferences drawn from the record." Morales v. Apfel, 225 F.3d 310, 318 (3d Cir. 2000).

In Markle v. Barnhart, 324 F.3d 182 (3rd Cir. 2003), the 48-

helper. (Tr. 615). Plaintiff worked as a cashier for four to six months. (Tr. 593). She worked in the food factory for about two years from 1992 to 1994 until she broke her arm in a machine and was afraid of the machine when she returned to work. (Tr. 137). She worked as an office cleaner for about six months. (Tr. 590). She worked at three different nursing homes for brief periods of time. (Tr. 137). The last job she held for an extended period of time was as an assistant manager at a convenience store for about a year, and then as manager of the same store for about a year. She was fired from this job. (Tr. 597). Plaintiff testified that a manager at another store, her assistant manager and her mother helped her with the paperwork and other duties. (Tr. 580). In fact, plaintiff stated that the assistant manager should have been the manager and she should have been the assistant. (Tr. 590).

The court agrees with defendant that the ALJ is not required to accept an IQ score which is inconsistent with the record. See Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986). An ALJ, however, "cannot reject IQ scores based on personal observations of the claimant and speculative inferences drawn from the record." Morales v. Apfel, 225 F.3d 310, 318 (3d Cir. 2000).

In Markle v. Barnhart, 324 F.3d 182 (3rd Cir. 2003), the 48-

year old claimant had a full-scale IQ score of 70.  He could pay his own bills, add and subtract, use an ATM machine, take care of all his own personal needs, and identify and administer his medication.  He had obtained his GED in the 1970s and had been employed at one time painting, wallpapering and cutting grass.  The psychologist who administered the IQ test had also found that the claimant in Markle was able to use judgment, function independently, work well with others and maintain attention and concentration.  The court concluded that this evidence "did not necessarily undermine the validity of Markle's reported IQ scores."  324 F.3d at 187.

In Morales v. Apfel, 225 F.3d 310, 318 (3rd Cir. 2000), the circuit court held that it was improper to reject the validity of an IQ score of 51 from a claimant who had a seventh grade education on the grounds (among others) that the claimant had worked as a landscaper, laborer and packing line worker.

In Brown v. Secretary of Health and Human Services, 948 F.2d 268 (6th Cir. 1991), the circuit court held that it was improper to consider an IQ score of 68 to be invalid on the basis that the claimant used public transit, had a driver's license, visited friends, was able to make change at a grocery store, did his laundry and cleaned his room, completed the sixth grade, could follow a road atlas, and had worked as a truck driver.

The court quoted the *Diagnostic and Statistical Manual of Mental Disorders* (3d ed. 1987) to indicate that persons with an IQ score of 70 can acquire academic skills up to approximately the sixth grade and can achieve social and vocational skills adequate for minimum self-support. In others words, the court recognized that the presence of some work experience and work skills as well as living skills is not inconsistent with an IQ score of 70.

In McKown v. Shalala, 1993 WL 335788 (10th Cir. 1993), the Tenth Circuit remanded a case for further findings after holding that the ALJ improperly disregarded an IQ score of 68 on the grounds that the claimant had graduated from high school and had spent two semesters in college. The court noted that the claimant testified that his last two years of high school involved ungraded vo-tech training and that he had not passed a single course in college.

In Nieves v. Secretary of Health and Human Services, 775 F.2d 12, 14 (1st Cir. 1985), the circuit court remanded for an award of benefits when it concluded that the ALJ was wrong to reject an IQ score of 63 on the grounds that it was inconsistent with the claimant's prior work as a seamstress.

These cases and our review of the record have persuaded the court to reverse defendant's decision to deny benefits. We hold

15

that plaintiff's work history, her GED, and the other points in the record noted by the ALJ, do not constitute substantial evidence to support defendant's implicit finding that the 2001 full-scale IQ score was invalid and that plaintiff did not meet the requirements of § 12.05C of the listing of impairments. The court has examined the cases cited on page 5 of defendant's brief as well as other cases in which IQ scores of 70 or below have been rejected as invalid. See, e.g., Gwathney v. Chater, 104 F.3d 1043 (8th Cir. 1997) and Mackey v. Shalala, 47 F.3d 951 (8th Cir. 1995). We find those cases distinguishable and unpersuasive.

Conclusion

On the basis of the above-stated reasoning, the court believes there is substantial proof in the record of entitlement to benefits and that a remand for further proceedings would serve no purpose. Therefore, the court shall direct that the defendant's decision to deny benefits be reversed and that the matter be remanded for calculation of benefits pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 15th day of March, 2005 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge